**COMPREHENSIVE HEALTH SYSTEMS, INC., a Utah corporation, Plaintiff,**

v.

**Terry CHAMBERLAIN, an individual, and John Does I through V, Defendants.**

**Civ. No. C86–502G.**

United States District Court, D. Utah, C.D.

Oct. 8, 1986.

Craig M. Peterson and E. Paul Wood, Salt Lake City, for plaintiff.

M. Jefferson Davis, Haddonfield, N.J., and Randall A. Mackey, Salt Lake City, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on for hearing on September 8, 1986. Plaintiff Comprehensive Health Systems, Inc. was represented by Craig M. Peterson and Paul Wood and defendant Terry Chamberlain was represented by M. Jefferson Davis and Randall A. Mackey. Legal memoranda were submitted on behalf of all parties and counsel argued the case extensively after which the matter was taken under advisement. The court now being fully advised, sets forth its Memorandum Decision and Order.

## FACTUAL BACKGROUND

Terry Chamberlain commenced an action against Comprehensive Health Systems, Inc. ("CompHealth") in the Superior Court of New Jersey on June 9, 1986, to recover commissions allegedly due under an employment agreement and to obtain declaratory relief invalidating a non-competition clause of the agreement. Defendant had actual knowledge from a third party source that filing of an action in Utah by plaintiff was imminent. At approximately 2:10 p.m. on June 10, 1986, service was made upon defendant CompHealth in Salt Lake City, Utah. Approximately one-half hour later, CompHealth commenced the instant action against Chamberlain alleging his willful and intentional breach of a non-competition clause contained in the employment agreement, which agreement was negotiated and executed in the State of Utah and which provides that Utah law shall govern. Copies of the summons and complaint were served upon defendant Chamberlain in New Jersey on June 11, 1986. The following day CompHealth applied to this court *ex parte* for the entry of an Order to Show Cause containing immediate restraints prohibiting Chamberlain from competing with CompHealth in certain activities. This court entered the Order to Show Cause without the requested temporary restraints and set June 30, 1986 as the return date thereof.

On June 13, 1986, Chamberlain filed with the Superior Court of New Jersey and served upon CompHealth his application for the entry of an Order to Show Cause with immediate restraints barring CompHealth from further prosecuting the Utah action. June 16, 1986 was set as the date for the Superior Court to act upon that application. Immediately prior to the Superior Court's scheduled consideration of the

Order, CompHealth removed the New Jersey action to the United States District Court for the District of New Jersey. On June 19, 1986, the District Court in New Jersey issued an Order to Show Cause on Chamberlain's application, but declined to restrain temporarily CompHealth from prosecuting the Utah action. The New Jersey court set June 26, 1986 as the return date of the Order to Show Cause for consideration of a preliminary injunction barring the defendant's further prosecution of the Utah action. On June 26, 1986, the district court in New Jersey heard argument and then suggested that the parties agree to permit the two District Judges to determine who would decide which of the two actions should proceed and which should not. On July 8, 1986 a Consent Order was entered in the New Jersey action by Judge Cowen embodying the agreement of the parties with respect to the jurisdictional conflict raised in this case.[1] Subsequently, the district judges conferred and determined that Judge Greene should decide this so-called "procedural issue."

The "procedural issue" before this court has been characterized as an application for stay of proceedings by the defendant Chamberlain and as a motion for transfer of venue by the plaintiff CompHealth. Regardless of how the matter is characterized, this court ultimately must balance those factors bearing upon the convenience and interests of each party in applying proper principles of judicial administration. Having examined the particular circumstances of this case, and having balanced numerous factors including judicial economy and convenience to the litigants and witnesses, this court concludes that the Utah action should proceed and the New Jersey action should be stayed from further proceedings.

## I. *The First to File Rule*

As early as 1824, the United States Supreme Court attempted to formulate guidelines to avoid duplicative litigation when jurisdictional disputes arose. In *Smith v. McIver*, 9 Wheat. 532, 22 U.S. 532, 6 L.Ed. 152 (1824) the Court stated:

> In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it.

*Id.* at 535. More recently, the Supreme Court had occasion to deal with the matter of jurisdictional conflicts between coordinate courts in *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). The Court noted that such problems call for the exercise of sound discretion by the trial court. The Court stated:

> Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.

*Id.* at 183–184, 72 S.Ct. at 221. In *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Court observed:

> [A]s between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation. See *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, supra; *Steelman v. All Continent Corp.*, 301 U.S. 278 [57 S.Ct. 705, 81 L.Ed. 1085] (1937); *Landis v. North American Co.*, 299 U.S. 248, 254 [57 S.Ct. 163, 165–66, 81 L.Ed. 153] (1936).

*Id.* at 817.

The Ninth Circuit in *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir.1982) has recently addressed the scope of the "First to File Rule":

---

**1.** The Consent Order provides that "Judge Cowen and Judge Greene will confer and reach agreement as to which Court (either the District of New Jersey or the District of Utah) shall consider and decide the issue of which of these two pending actions shall proceed and which shall not ('the procedural issue')."

Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action. However, *this "first to file" rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration.* As we stated in *Church of Scientology,*

> [T]he "first to file" rule normally serves the purpose of promoting efficiency well and should not be disregarded lightly. *Circumstances and modern judicial reality, however, may demand that we follow a different approach from time to time*
>
> . . . .

678 F.2d at 95 (*quoting Church of Scientology of California v. United States,* 611 F.2d 738, 750 (9th Cir.1979) (emphasis added)). *See also Landis v. North American Co.,* 299 U.S. at 254, 57 S.Ct. 165–66; *Remington Prod. Corp. v. American Aerovap, Inc.,* 192 F.2d 872 (2nd Cir.1951); *William Gluckin & Co. v. International Playtex Corp.,* 407 F.2d 177, 179 (2d Cir.1969) (an "inflexible" approach is to be avoided); *National Patent Dev. Corp. v. American Hospital Supply Corp.,* 616 F.Supp. 114, 118 (S.D.N.Y.1984).

In *Culbertson v. Midwest Uranium Co.,* 132 F.Supp. 678, 679 (D.Utah 1955), Judge Anderson of this court addressed the issue, stating:

> It is generally held that between two federal courts, the one first acquiring jurisdiction of a given case should be permitted to decide it without interference by the other, and that the plaintiff in the first forum may enjoin the defendant from proceeding as a plaintiff in the second forum.

The court also pointed out that:

> [A] court of another jurisdiction is not without power to apply principles of proper judicial administration, economy of time and appropriate deference

*to another court first acquiring jurisdiction.* The power to stay proceedings is incidental to the power inherent in every court to control the disposition of cases on its docket in view of these principles.

*Id.* at 680 (emphasis added). Other courts have also recognized that a balancing of such factors as convenience of the parties, can vary rigid application of the "First to File Rule." In *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197 (2nd Cir. 1970) the court said:

> [W]e can see no reason why the end result should be different when the party seeking to preserve the primacy of the first court moves the second court to stay its hand rather than asking the first court to enjoin prosecution of the second case. Whatever the procedure, the first suit should have priority, *"absent the showing of balance of convenience in favor of the second action."*

*Id.* at 1201, (*quoting Remington Products,* 192 F.2d at 873) (emphasis added).

While demonstrating the continuing viability of the "First to File Rule," all of the aforesaid authorities recognize the broad discretion vested in trial judges and that the ultimate determination often rests upon a balancing of convenience. This court finds that the "procedural issue" raised herein cannot properly be determined solely under the first to file doctrine, but requires an exercise of sound discretion after due consideration of principles of proper judicial administration, including a balancing of the interests of the parties and individuals involved.

## II. *Balancing the Interests*

Although the Tenth Circuit has not specifically addressed the issue of venue where competing litigants have filed separate actions in separate jurisdictions, the court has enumerated the following factors as important in venue determination:

> Among the factors [a district court judge] should consider is the *plaintiff's choice of forum;* the *accessibility of witnesses and other sources of proof,* in-

cluding the availability of compulsory process to insure attendance of witness; the *costs* of making the necessary proof; questions as to the *enforceability of a judgment* if one is obtained; *relative advantages and obstacles* to a fair trial; difficulties that may arise from *congested dockets;* the possibility of the existence of questions arising in the area of *conflicts of law;* the advantage of having a *local court determine questions of local law;* and all other *considerations of a practical nature* that make a trial easy, expeditious and economical.

*Texas Gulf Sulfur Co. v. Ritter,* 371 F.2d 145, 147 (10th Cir.1967) (emphasis added).

Based upon submissions presented to the court, it appears that CompHealth intends to call at least five witnesses who presently reside in the State of Utah; one witness who maintains a residence in Utah, but personally resides in the State of Georgia; one witness from the State of New Hampshire; one witness from the State of New York; and one witness from the State of Delaware. In addition to his own testimony, defendant Chamberlain intends to utilize the testimony of three of the above-referenced witnesses, who presently reside outside the State of Utah, and possibly out-of-state expert witnesses. CompHealth's corporate headquarters are located in Salt Lake City, Utah, and most of the relevant records and documents are located in this state, including all original records which relate to employment records, client development, physician placement agreements, expense receipts and statements of commissions earned. Further, all payments and billings are executed in and all client billing and physician payroll records are maintained in this state. While Chamberlain also possesses several documents, such could easily be transported for introduction at trial. The potential cost of transporting the relevant records, as well as the numerous witnesses, nearly all of whom reside outside of New Jersey, to the state of Utah appears to be demonstrably less than the possible economic burden of holding a trial in the State of New Jersey.

Regarding a trial court's consideration of the governing law, the United States Supreme Court, in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1946) has stated:

> There is an appropriateness ... in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

In the instant case, the employment agreement between Chamberlain and CompHealth specifically provides in paragraph 15 that the "agreement shall be construed under the laws of the State of Utah."

Consideration of factors such as proper judicial administration, economy of time, application of Utah law, ease of accessibility of travel to forum, enforceability of judgments rendered, fundamental fairness to the litigants and judicial deference to the court first acquiring jurisdiction, suggests that the balance of convenience to all interested persons weighs in favor of proceeding in the State of Utah. This court so finds. Venue is also determined to properly rest in the district court for the District of Utah. Accordingly, this court exercises its discretion in favor of staying the New Jersey action and ordering the Utah action to proceed forthwith.

This Memorandum Decision and Order is in all respects final and counsel need neither prepare nor submit additional memoranda or orders for the court.

IT IS SO ORDERED.